IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 23, 2022

## LARRY LEE SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 106884    Kyle A. Hixson, Judge**

---

### No. E2021-01303-CCA-R3-PC

---

The petitioner, Larry Lee Smith, appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of aggravated rape and aggravated kidnapping, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk, Madisonville, Tennessee, for the appellant, Larry Lee Smith.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In January 2012, the Knox County Grand Jury charged the petitioner with one count of aggravated rape and two alternative counts of aggravated kidnapping. *State v. Larry Lee Smith*, No. E2013-01162-CCA-R3-CD, 2014 WL 6612581, at *1 (Tenn. Crim. App., Knoxville, Nov. 24, 2014). At the February 2013 trial, the State's evidence established that in October 2011, the 16-year-old-victim and her boyfriend were living with the petitioner's neighbor. *Id.* On October 24, 2011, while visiting the petitioner's studio apartment, the victim learned that her boyfriend had been arrested and "immediately began to cry." *Id.* The petitioner "attempted to console" the victim and prepared some food. *Id.* The petitioner then "asked the victim to help him with something at the side of the bed" and, "as the victim reached over to the edge," the petitioner bound one of her hands with a necktie and forced himself on top of her. *Id.* The petitioner held down the victim's legs

"with his body weight," "placed his forearm on the victim's neck" until "she became light-headed and 'could barely breathe,'" and digitally penetrated her vagina. *Id.* After the assault, the petitioner placed a chair in front of the door and told the victim "that she was not going anywhere." *Id.* at *2. After the victim threatened to jump from the balcony, the petitioner allowed her to exit through the door but "asked her not to say anything." *Id.* The jury convicted the petitioner as charged, and the trial court merged the aggravated kidnapping convictions and sentenced the petitioner to an effective life sentence without the possibility of parole. *Id.* at *1. This court affirmed the petitioner's convictions on direct appeal, and our supreme court denied review. *Id.*

The petitioner filed a timely petition for post-conviction relief raising multiple claims, including a claim that trial counsel performed deficiently. After the appointment of counsel, the petitioner filed an amended post-conviction petition further fleshing out his claim of ineffective assistance of counsel, asserting that trial counsel failed to adequately prepare him to testify.

At the September 2021 evidentiary hearing, the petitioner testified that he met with trial counsel "several times" in preparation for trial but that the meetings were "not very long." He said that he and counsel discussed whether the petitioner would testify but that counsel did not explain the advantages and disadvantages of doing so. He said that he prepared for trial expecting to testify and that he felt that "it was impossible for me not to testify" because counsel did not call any other witnesses. He said that he told counsel that he had two prior felony convictions but that counsel did not discuss the significance of those prior convictions. He denied that counsel ever used the phrase "opening the door" when discussing his prior convictions or that counsel ever discussed whether he should refer to his prior convictions during his testimony. He said that if counsel had explained the risks of bringing up his prior criminal history, he "would have been more careful" in his testimony.

During cross-examination, the petitioner acknowledged that in his trial testimony he said that the victim invited him to participate in criminal activity and that he told the victim that his "first felony" would land him in jail. He also acknowledged that he had been convicted of involuntary sexual battery in Florida in 1982 and kidnapping in Georgia in 1990. He explained that in his trial testimony he did not mean that his involvement in criminal activity would be his first felony but rather that any felony conviction would result in his incarceration. He said that after he was cross-examined by the State, he asked trial counsel to conduct redirect examination so that he could further explain his testimony but that counsel declined to do so.

Trial counsel testified that he met with the petitioner "on a number of occasions" and hired a private investigator to assist in his preparation of the case. Counsel

acknowledged that the petitioner provided him with several names of potential witnesses but said that his investigator was unable "to locate any of those witnesses." He said his discussion with petitioner about whether he should testify "would have went something like, this is going to be her version of events versus your version of events. It's likely that you will have to testify. But certainly you don't have to make up your mind until all the State's proof . . . is in." Counsel said that his investigator interviewed the victim and "believed that she would be a very good witness at trial" and concluded that the petitioner "would probably have to testify."

Trial counsel said that his "theory of the case was that the victim came to [the petitioner's] room upset; he had tried to comfort her, which included embracing her" and when the petitioner declined the victim's request to sell his prescription medications for money, the victim "became angry." He said that the petitioner's testimony was necessary to establish the defense theory because no other witnesses could testify to what happened in the petitioner's apartment. Counsel said that he knew about the petitioner's two prior convictions but said that he "didn't believe they were going to come into evidence if he testified" "[b]ecause of the nature of the offenses" and because the convictions "were older." He said that he discussed with the petitioner "the potential admissibility" of his prior convictions but based on his theory of the case, "I didn't foresee any testimony, any testimony on [the petitioner's] part that would have opened the door to those." He said that he was not concerned that the petitioner would bring up his prior convictions because "based on my conversation with him . . . . [i]t was very focused on the situation at hand and [did] not . . . get outside the bounds of that situation." Counsel could not recall whether he specifically warned the petitioner to avoid saying that he did not have any prior convictions. He said that during the petitioner's direct examination, he did not ask the petitioner why he did not want to sell his medications for money but that the petitioner "went into that on his own." "At that point in time he was freelancing on his testimony."

During cross-examination, trial counsel acknowledged that the petitioner's case turned on the credibility of the witnesses and that the victim was a credible witness.

In its written order denying post-conviction relief, the post-conviction court implicitly accredited trial counsel's testimony, finding that counsel discussed the petitioner's prior convictions and "discussed the possibility that they could be admitted at trial" and that counsel "did not perceive there to be any danger of 'opening the door' to the admissibility of these convictions." The court concluded that trial counsel had no obligation to advise the petitioner not to lie about his criminal history and that the petitioner's mentioning his "first felony" during his trial testimony "deviated from the plan that had been formulated pretrial with his defense team." The post-conviction court also concluded that the petitioner had failed to establish that he was prejudiced by counsel's actions.

As a preliminary matter, we note that the petitioner's notice of appeal is late by one day. The post-conviction court entered its order denying relief on October 4, 2021, making the notice of appeal due on November 3, 2021. *See* Tenn. R. App. P. 4(a) ("[T]he notice of appeal . . . shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from . . . ."). The notice of appeal, however, was not filed until November 4, 2021. In this case, we conclude that the interests of justice are served by our waiving the timely filing requirement and considering the case on the merits. *See id.*

In this appeal, the petitioner reasserts his claim that counsel performed deficiently by failing to prepare him to avoid opening the door to the State's bringing in his prior convictions. The State argues that the petitioner is not entitled to post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

-4-

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

We need not tarry long on the petitioner's claim. This court concluded on direct appeal that "the [petitioner] has failed to show that any error on the part of the trial court in admitting his prior convictions 'more probably than not affected the outcome of the trial.'" *Larry Lee Smith*, 2014 WL 6612581, at *9 (citation omitted). Thus, even if counsel performed deficiently in preparing the petitioner for his trial testimony, that the exclusion of the petitioner's prior convictions would not have changed the outcome of the trial has been previously determined, and, consequently, the petitioner cannot show that he was prejudiced by counsel's actions. *See* T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing."). Moreover, the petitioner testified that he did not use the phrase "first felony" to indicate that he lacked prior convictions. If this is so, even a warning by counsel to avoid referencing his prior convictions would not have changed the petitioner's testimony. The petitioner is not entitled to post-conviction relief.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-5-